# FARNEY DANIELS LLP

800 South Austin Ave., Suite 200
Georgetown, Texas 78626-5845
512-582-2828
www.farneydaniels.com

April 30, 2012

| | |
|---|---|
| Honorable Donovan W. Frank | Honorable Steven E. Rau |
| United States District Court | Magistrate Judge |
| for the District of Minnesota | United States District Court |
| 724 Federal Building | 334 Warren E. Burger Federal Courthouse |
| 316 N. Robert Street | 316 N. Robert Street |
| St. Paul, MN 55101 | St. Paul, MN 55101 |

    Re:    *In re: Vehicle Tracking and Security System ('844) Patent Litigation*; MDL No. 11-2249 (DWF/SER) – **THIS FILING RELATES TO:** *Xata Corp. v. PJC Logistics, LLC*; Civil Action No. 0:11-cv-00871-DWF-SER; In the United States District Court for the District of Minnesota

Dear Judge Frank and Magistrate Rau:

    Plaintiff PJC Logistics, LLC ("PJC") submits this letter pursuant to Pretrial Orders 44 and 72, to address the objections of Defendant XATA Corporation ("Xata") regarding the adequacy of PJC's Preliminary Infringement Contentions ("PICs") served on April 16, 2012. As will be explained in this letter, Xata's objections to the PICs are transparently incorrect or rely on a fundamental misconception of what infringement contentions are designed to do. Indeed, as explained in the Overview Letter, which PJC incorporates herein by reference, the purpose of the PICs is to put Xata on reasonable notice of PJC's infringement theories at this preliminary stage of the case. They are not, as Xata presupposes, a substitute for summary judgment or trial.

## I.    PROCEDURAL BACKGROUND

    In joining the Defendants' Joint Letter to the Court, Xata represented to the Court that it was completely bewildered as to what Xata products PJC could be accusing of infringement. *See* Overview Letter at 2. However, it must be recalled that *Xata* filed a declaratory judgment complaint *against PJC*; PJC did not initially sue Xata. There is no doubt that Xata understands exactly what it is that PJC accused of infringement, and why and how it accuses Xata of infringement. The core purpose of PICs, which is to provide notice to defendants of what plaintiff believes infringes, has long been satisfied with respect to Xata in this case.

    It is telling that in its April 2nd letter Xata only asserted boilerplate, broadly worded objections rather than point to *any* specific inadequacies. Exh A (Xata's April 2nd Letter). Specifically, other than grafting in the other Defendants' stock objection that the allegations with respect to indirect infringement and doctrine of equivalents were somehow insufficient, Xata only complained vaguely that "elements within the accused systems or methods" were not identified, and that "factual basis that certain limitations were met" was somehow lacking. *Id.* In short, from the face of this letter, it is unclear precisely what, if anything, Xata found objectionable about the PICs. Despite lacking any clarity on what, if any, objections Xata might have, PJC substantially supplemented its PICs on April 16th in an effort to moot this meaningless skirmish.

That Xata's complaints are not the result of any diligent review of the PICs is demonstrated by, among other things, the fact that no more than a few working hours after receiving PJC's substantial supplementation, Xata responded by saying that while it had only done a "preliminary" review of the new PICs, it would be maintaining its objections. Exh B (Xata's April 17th Letter). Had Xata actually reviewed those PICs rather than simply blindly reasserting its objections, it could easily have determined that PJC's PICs amply satisfy any applicable standard for sufficient contentions.

## II.   PJC'S CONTENTIONS WITH RESPECT TO XATA ARE SUFFICIENT

PJC's PICs illustrating infringement by Xata's products are sufficient because they provide ample notice to Xata of PJC's infringement theory. *See* Overview Letter. Xata's scattershot, blanket complaints with respect to PJC's PICs are unfounded for several reasons, as discussed below.

### A.   *PJC's PICs Identify Each Element in Xata's Products*

To the extent Xata will reiterate its earlier objections that PJC's PICs do not "identify which elements within the accused systems or methods meet the limitation in question" or "provide any factual basis that certain limitations were met by the accused systems and methods," this is transparently wrong. PJC's PICs served on April 16th do in fact clearly map each claim element to structures in Xata's products, as well as detailed factual bases for why certain limitations were met. This the Court may readily observe by perusing each of the PICs for Xata's products. *See* Exhibits C-1 (Xatanet), C-2 (Xata Turnpike) and C-3 (Xata MobileMax). For brevity, PJC will address below the PICs related to infringement of claim 7 by the Xatanet product, but the same points apply to the adequacy of the PICs with respect to infringement of claim 12 by Xatanet, and to infringement of claims 7 and 12 by the other two Xata products.

The Xatanet PICs sets out factual predicate for infringement by Xatanet. In overview, claim 7 claims a mobile unit for a vehicle monitoring system that includes the following components: (1) an input unit responsive to an event or condition; (2) a location unit that has a satellite receiver; (3) a cellular transmitter for transmitting information only when in range of a cellular network, including a means for determining the transmitter is in range; (5) a controller including (a) a storage device and (b) a processor for storing and transmitting information from the input unit and the location unit in a specified manner.

As shown in the PICs, there is no doubt that the Xatanet system includes a mobile unit for a vehicle monitoring system. Xata's own Annual Reports and Press Releases describes Xatanet as a system for vehicle monitoring, and moreover states that this system utilizes the ConnectPort X5 ("X5") hardware platform, provided by Xata in partnership with Digi International ("Digi"). Exh C-1 at 1. The components of claim 7, listed above, are each then mapped in the PICs to the X5 as appropriate.

In the PICs, the X5 is shown to include an "input unit" that responds to events or conditions. Specifically, the PICs map the input unit element to the hardware and software associated with the industry standard CAN bus interface, as shown in the excerpt below:

 Exh. C-1 at 6.

Similarly, the PICs demonstrate that the X5 also has the required "location unit" that includes a satellite receiver.  Specifically, the PICs map this element to the GPS receiver and associated software embedded in the X5 platform.  Indeed, the PICs even include an arrow pointing directly to the GPS port labeled on a schematic of the X5, as well as citation to the X5's technical specification stating that it has a GPS receiver (Exh C-a at 12-13):



The other physical components of the mobile unit of claim 7, such as the "cellular telephone transmitter," "mobile unit controller," "storage device" and "processor" have also been identified in the PICs in a similar fashion.  *See* Exh C-1; *also* Exh C-2, C-3.

With respect to functional limitations of these physical components that do not lend themselves easily to physical observation, PJC's PICs state the specific factual bases for why such limitations are met.  For example, with respect to the cellular transmitter component, claim 7 further requires that it transmit information only when in range of a cellular network, and for this purpose also include a means for determining whether the transmitter is in range.  PJC's contention is that this function is associated with the cellular transmitter embedded in the X5, and this contention is explained and supported by circumstantial evidence demonstrating that the transmitter embedded in the X5 is a *GSM* transmitter, and further that all GSM transmitters will execute software protocols to detect the presence of a cellular network before they transmit information.  Exh. C-1 at 18-23.  As such, the PICs identify the means for determining whether the transmitter is in range as the analogous software protocols associated with the GSM transmitter embedded in the X5.  A similar level of detail, along with citations to circumstantial evidence, is provided in the PICs with respect to other functions required of the physical components identified in the Xatanet system, such as the "storing" and "retrieving" functions that are performed only when certain circumstances exist.  *See* Exh. C-1, C2, C3.

As discussed in the Overview Letter, by demonstrating software-driven functions of the Xatanet system by means of circumstantial evidence, PJC has more than met its burden to put Xata on notice of PJC's contentions with respect to these limitations.  *See e.g., Fusionarc, Inc. v. Solidus Neworks, Inc.*, 2007 U.S. Dist. LEXIS 28970 at *4, 8 (N.D. Cal. Apr. 5, 2007) (denying defendant's motion to strike preliminary contentions where contentions sufficiently "link[ed] [plaintiffs] contentions regarding [defendant's] accused systems to the claims of the patent" by mapping claim elements describing software function to defendant's "marketing materials and similar descriptions of how its systems operate and *not* on any process of 'reverse engineering' or similar process") (emphases in original).

In addition, as described in the Overview Letter, PJC has also articulated its current position with respect to Xata's infringement under the Doctrine of Equivalents consistent with the Court's Order.

### B. *Xata's Other Objections Are Not Pertinent to PICs or the Court's Order*

To the extent Xata reprises other objections set out in its April 2nd, letter, these objections must also be dismissed because they are simply not pertinent to evaluating either the sufficiency of PJC's PICs or compliance with the Court's Order.

For instance, Xata objected that the PICs "failed to identify any corresponding structure in the specification for limitations that PJC contends are means-plus-function limitations." Xata's objection misses the mark both substantively and procedurally. First, identification of means-plus-function structure in the *patent specification* is not required by the Court's Order. Dkt. No. 44. Rather, the Court's Order requires PJC to identify where each element, including means-plus-function elements, is found in the *accused products*, and this PJC has done. *See supra*. Second, Xata's objection is premature in that identification of corresponding structure in the specification is part of *construction* of means-plus-function terms, and exchange of claim constructions is not due to occur until after both sides have exchanged infringement and validity related disclosures. Dkt. No. 42 at 6.

Xata also complained that PJC's PICs "failed to allege any indirect infringement," and as such unilaterally concluded that "PJC admits it has no contention in this respect." This vague objection is nonsensical. In fact, neither the Court's Pretrial Order nor Form 4 requires detailed descriptions of acts constituting indirect infringement,[1] but even if Xata may "read in" such a requirement, the PICs specify that Xata indirectly infringes each asserted claim by inducing and/or contributing to direct infringement by at least its customers.

Xata may also attempt to revive its April 2nd objections with respect to identification of specific elements, by asserting that the PICs state insufficient factual bases for alleging that a limitation is met. However, such arguments would confuse PICs with *trial*. As discussed in the Overview Letter, PICs need only provide *notice* of an infringement *theory*. Overview Letter at 3. The PICs need not include evidence *supporting* or *proving* infringement, because that is what trial on the merits is for. *Id.* Xata may protest that it disagrees with whether PJC's factual bases are *enough*, but once the PICs have satisfied their notice function, ultimately the proper avenue for resolving such disputes is through discovery and trial, and *not* through pre-trying the merits at the contention stage. *See id*.

### III.   Conclusion

As shown above, PJC's PICs sufficiently point out where each element of each claim is found in Xata's products, and as such provides ample notice to Xata of PJC's infringement theory. Xata's objections to the contrary are baseless and should be dismissed.

---

[1] *Contrast* N.D. Cal. Local Patent Rule 3-1(d). However zealously Xata may favor the Northern California rule, it cannot import text from that district into this Court's Order.

Honorable Donovan W. Frank<br>
Honorable Steven E. Rau<br>
April 30, 2012<br>
Page 5

Respectfully Submitted,

*/s/ Bryan Farney*

Bryan Farney
Counsel for PJC Logistics LLC